PAUL M. MORRIS *vs.* BOARD OF REGISTRARS OF VOTERS OF EAST BRIDGEWATER & others.

Plymouth. March 10, 1972. — June 5, 1972.

Present: TAURO, C. J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

*Elections. Law or Fact.*

The determination of the legal effect of a ballot in an election case is a question of law.   [49, 51–52]

In an election case, it was error to order two ballots to be counted for a certain candidate where each ballot contained significant check marks against the names of both such candidate and another candidate so that the intent of the voters casting the two ballots could not be determined; the two ballots must be counted as blanks. [52–53]

PETITION for a writ of mandamus filed in the Superior Court on April 6, 1970.

The case was heard by *Leen,* J.

*Edward P. Kirby* for the petitioner.

*Paul F. Lehan* for Charles M. Repeta, Jr.

REARDON, J.   This petition is for a writ of mandamus and is brought against the Board of Registrars of Voters of East Bridgewater (the board) and the town clerk, as well as against Charles M. Repeta, Jr., a registered voter in that town.   The petitioner is likewise a registered voter, and he and Repeta were among five candidates for the office of selectman at an election held on March 7,

1970. Upon a count of the ballots the town clerk on March 8, 1970, declared that Repeta had been elected selectman and a certificate of election was issued, whereupon he gave his oath and entered upon the selectman's duties. The petitioner requested a recount which was held on March 18, 1970, conformable to the pertinent provisions of G. L. c. 54, § 135. At the conclusion of the recount the board by written decision stated that the recount, which showed Repeta elected by a margin of two votes over the petitioner, did not change the results of the election. This petition for mandamus under G. L. c. 56, § 59, followed. It seeks an order requiring the board to certify to the town clerk the election of the petitioner.

The count on five ballots was contested by the petitioner at the recount. A judge of the Superior Court, after hearing the petition, ruled that protested ballots Nos. 1, 2, and 3 were correctly counted for Repeta, while protested ballots Nos. 4 and 5 were incorrectly counted as blanks and should have been counted for the petitioner. The judge thus ruled that each of the two candidates received 520 votes and, hence, since no candidate had received a plurality of the votes cast, no one was elected to the office of selectman. He entered an order for judgment that the writ issue commanding the board to count the protested ballots and certify the failure to elect in accordance with his ruling. Both the petitioner and Repeta have appealed the order for judgment.

The determination of the legal effect of ballots is a question of law. *DePetrillo* v. *Registrars of Voters of Rehoboth,* 342 Mass. 13, 14. *Chamberlain* v. *Registrars of Voters of Harwich,* 358 Mass. 536, 539. The basic purpose of the review of the ballot is the ascertainment of the will of the voter. "If the ballot, considered in the light of the character and location of the mark and conditions attendant upon the election, fairly indicates the voter's intent, the vote should be counted in accordance with that intent, provided the voter has substantially complied with the requisites of the election law. The

voter is not to be disfranchised because of minor irregularities. Where, however, the ballot is marked in such a way as to leave the intent of the voter in the realm of conjecture, the vote should not be counted." *Kane* v. *Registrars of Voters of Fall River,* 328 Mass. 511, 518. We proceed now to an examination of the ballots.[1]

As to the first three ballots protested, we conclude as did the judge for reasons which he assigned as follows and which we adopt.

"As to protested ballot number 1, which ballot was counted for the candidate Repeta, I rule that the respondent board correctly counted this ballot. This court did not have the benefit of the testimony of any person skilled in the art (or science) of handwriting, and had to rely on its own eyesight and judgment. From an examination of the entire ballot, it is clear that the voter understood that the marking of a cross beside the name of a candidate was the appropriate way to register his choice. The cross beside the name of the candidate Repeta is clear and unmistakable. The markings in the box beside the name of the candidate Chase do not indicate a 'final decision' on the part of the voter as to his choice for selectman, but are quite consistent with a mistake having been made by the voter in the first instance, and an attempt then being made to rectify the mistake by 'scribbling' rather than by an erasure. Under such circumstances, and in the absence of any evidence other than the ballot itself, I rule that the intent of the voter was not left in the realm of conjecture, and that the respondents correctly counted the ballot as a vote for the candidate Repeta.

"With regard to protested ballot No. 2, this ballot was counted for the candidate Repeta. It is clear from the markings on the ballot, that a cross had been placed beside the name of the candidate Robichaud and later

---

[1] The exhibits include the five protested ballots, and one block of fifty votes (block 39) and its tally sheet. Two of the protested ballots are from block 39; hence, block 39 now contains forty-eight ballots.

362 Mass. 48                                                    51

Morris *v.* Board of Registrars of Voters of East Bridgewater.

erased.  The cross beside the name of the candidate Repeta is clear and distinct, and the vague and formless markings around that cross are of no more significance than similar markings in the box beside the name of one Carey, a candidate for Moderator, which appears at the top of the ballot.  An erasure always give rise to a suspicion of tampering.  Suspicion, however, is not evidence, and insofar as ballot No. 2 is concerned, the presumption of regularity has not been overcome.  I therefore rule that the respondents correctly counted ballot No. 2 for the candidate Repeta.

"Ballot No. 3 was counted for the candidate Repeta, and I am unable to find any error in the action of the respondents in so counting the ballot.  If one examines this ballot as a whole, it appears that at least in the first column (the vote for Moderator through Auditor), the voter first placed rather small crosses in the upper left-hand corner of the boxes beside the names of the various candidates, subsequently erased them, and replaced them with large crosses that filled the entire boxes.  Insofar as intent is concerned, these markings appear to be an indication of nothing other than a clear intention to vote for the designated candidates, including the candidate Repeta.  I rule that the respondents correctly counted ballot No. 3 for the candidate Repeta."

The fourth ballot protested contains two checkmarks in the boxes opposite the names of candidates for the office of selectman, one beside the name of the petitioner, the other beside the name of the candidate Robichaud. Based on the number of votes counted as blanks in the recount in a certain block of fifty votes, in contrast to the number of votes so counted at the original count, the judge concluded that despite the presumption of regularity in the election process "some unauthorized person added the cross [*sic*] beside the name of the candidate Robichaud with the intent of vitiating the original vote for the petitioner."

The petitioner has urged us not to consider the ruling of the judge with respect to protested ballot No. 4 as a

ruling of law but to consider it as a finding of fact based in part on the judge's impressions of testimony he heard from town officials. We think such an approach, with its attendant alteration of the standard of review (see *Berman* v. *Coakley*, 257 Mass. 159, 162) is not warranted. The bases of the judge's ruling are set out. They are unambiguous and do not pass upon the credibility of witnesses or other aspects of evidence subject to judgment by a factfinder. On the contrary, since the ballots are before us, they involve matters with which we are equally competent to deal and to which we now turn our attention.

In our view, the checkmarks made on protested ballot No. 4 were made by the same person. The questioned checkmark beside the name of Robichaud resembles others appearing on other parts of the ballot. It does not appear to us to have been placed on the ballot by an alien hand. We thus cannot determine for whom this voter intended to cast his vote. *Kane* v. *Registrars of Voters of Fall River*, 328 Mass. 511, 518. That this ballot may have been counted for the petitioner at one point, and on the recount counted as a blank, leads us only to conclude that a miscount at the original ballot count was detected and corrected upon the closer scrutiny of a recount. The presumption of regularity in the acts of public bodies confirms us in this conclusion. *Talbot* v. *Registrars of Voters of Somerset*, 281 Mass. 284, 286. See *Openshaw* v. *Fall River*, 287 Mass. 426, 432.

Protested ballot No. 5 also contains marks in the boxes beside the names of the petitioner and Robichaud. The judge characterized the mark beside the name of the petitioner as "a clear and unmistakable checkmark," and the mark beside the name of Robichaud as a "diagonal line" which was placed there by "error or mischance," so that the voter intended the vote be counted for the petitioner. Again we are compelled to disagree. The mark referred to as a "diagonal line" is not a single diagonal line but is rather a checkmark

closely resembling checkmarks in other parts of the ballot. We view this checkmark as evincing an intent on the part of the voter to vote for Robichaud as surely as similar checkmarks in other parts of the ballot evidenced an intent to vote for candidates running for other positions. We are thus unable to determine for which candidate, the petitioner or Robichaud, this ballot was intended to be cast. Protested ballot No. 5 should be counted as a blank.

Thus, affirming the determination of the judge on the first three protested ballots, and reversing his determination as to the last two, we rule that Repeta received 520 votes and that the petitioner received a total of 518 votes, with the result that Repeta was elected to the office of selectman by a margin of two votes, and that the declaration by the town clerk to that effect was proper.

The order for issuance of the writ of mandamus is reversed. Judgment dismissing the petition is to be entered.

*So ordered.*